I note that we have a lot of people sitting here, so are you going to be — are you the only person arguing on your side? I am, Your Honor. And then on the other side? Just me, Your Honor. Okay, good. Okay, thank you. Good morning. May it please the Court. Katherine Clark for the plaintiffs. I'm going to start here with the procedural obstacles to consideration of the first issue, that is, the sufficiency of the pleadings. The Court — this Court has twice held the defaults were proper, and the mandate in the second appeal was limited to a prejudgment hearing on damages. I'm going to quote that mandate. The Ninth Circuit mandate reads, the default judgments in Rubicon 1, 2, and 3 are vacated and remanded for a factual determination of damages in those cases. That's from the opening brief at 21, and it appears twice, actually, in the opinion. So if you vacate the default judgment, then you still would have to reenter it, right? There's nothing there. There has to be a — there was a default order. These were affirmed. Those defaults were affirmed twice by this Court. The judgment was set aside because of the lack of a prejudgment hearing. Right. But in the — Well, I understand your argument, but it's not the clearest mandate I've ever seen. It appeared clear, I must say, to the plaintiffs. Okay. That what was the problem, because there were other issues raised in the second appeal, as in the first appeal. We've tried to lay this out in our opening brief, and I'm not going to be able to go through the entire eight-year history. But there were other issues raised in the first appeal regarding the fact that the Orico, the Oregon Orico, was dismissed for insufficiency of pleading before we got on appeal. So they did get rid of one of them, yes. And there were no issues raised with the sufficiency of the pleadings to support a default in the second appeal that they took from the default judgments. I could give them — on the first one, they were arguing about sufficiency of the pleading in personal jurisdiction. So maybe you don't want to get into the sufficiency of the complaint because you're making special appearances. Fine. But on the second appeal, when the defendants were the appellants, and the judge had gone back and said, okay, I'm going to — basically, he reset the clock because the Ninth Circuit sent it back and said, no, the service was adequate and the judge said, so you need to go back, and he reentered the default judgments. Now, inherent or implicit in doing that, he would have concluded that there were sufficient — there was a sufficient complaint to support the judgments, and the defendants had every opportunity to challenge it. And as I read the record here, they never filed a failure to state a claim or challenged the sufficiency of the complaint. They challenged other things. They challenged a lot of things in the second appeal, including that there was no hearing, which I actually think the remand is very specific, go back and have a hearing, but did not raise a defect based on the inadequacy of the complaint. That's absolutely right. So one could find that they waived that claim. That's exactly right. So one, it was inconsistent with the mandate, we say, but the second thing is waiver in law of the case. And waiver in law of the case are actually quite — they're sort of related concepts. If you have raised something and it's been ruled on, it's law of the case. If you have not raised it and had the opportunity to do so, it's waived. And that is an alternative approach to the law of the case. I have more problems with the law of the case argument than the mandate, because this has been vacated some — and when you vacate something, then there's no law of the case anymore when you're starting over. Well, there's certainly law of the case about jurisdiction and service of summons that validated the default orders. That was still — there still were orders of default that had been set aside the first time around because of jurisdiction and service of process that were reinstated. So I guess there's a couple of elephants in the room here, that in terms of that it seems like that one could make the argument that the — I don't know how to — I guess it would be the — we're going to call them — I'm going to call them the defendants and you the plaintiffs, okay? And that the defendants were being kind of shady about service and all of that. And so then finally it comes up for that and we say, okay, no, there's service. And then I have no idea how this got up to $380 million when it started with — and so then when the Ninth Circuit saw that, then they're kind of going, whoa, like you're running the table there. And so, you know, both of the — it seems like the sides are taking extreme positions, like there's no service and then like it's $380 million and they made a $500,000 investment and claiming that somehow it's worth $380 million. And those — The $380 million — We keep getting presented with extremes in the Ninth Circuit on this. The $380 million, by the way, was because there were three cases, varying defendants in those cases, but three cases and a RICO and the multiplier of damages. But we're not there anymore. We're not there anymore. The court said you have to have a hearing on damages. And that's what we went back to. Okay. So in the alternative, the court said that the damages were something like, what, $915,000 or something like that? I believe that I cannot recall the exact figure. Somewhere around there. Yes. It was $500,000 and some thousand in economic investment, loss of investment, minus the $200,000 that the USA affiliate had paid, trebled. So it came out to $900,000-plus, slightly under a million. We are also contesting the way that was computed because of a misunderstanding and a communication between the court and plaintiff's lawyer at the hearing as to how that deduction should occur. It was our position that you take, if you've got RICO, you treble the damages, and then you're going to deduct any payments that are made. So the deduction should have come after the trebling. So it would have been $1.5 million less the $200,000. So if, on the abuse of the, on the going outside the mandate, if the district court did, because it was a different judge by then, because this has been going on like 10 years or whatever. So it's a different judge by then. I think Chief Judge Mossman or something like that. What's the standard of review for whether he exceeded the mandate? I think that's a question of law. It's de novo review as to whether he exceeded the mandate. That's what we have said. Is that a standard of review? If it's clear. If it's not clear, then is it abuse of discretion? I'm not sure I'm willing to go there. I think it was said. Well, I know you don't have to concede that you're willing to go there, but let's say hypothetically. As to the mandate, it might be an abuse of discretion as to whether or not. But we have another problem here that's another procedural obstacle, and that's called waiver. That they waited until 2016 to raise the alleged insufficiency of the pleadings when they had been in litigation about the defaults since 2010. And through two appeals and two times before the court previous, the district court previously, before they saw fit to raise these issues. So that's the waiver argument. That they simply waived it. It's too late. We came back for a hearing on the damages that the judge held, but it was of an expensive nullity, and there's a dissonance between coming back for a hearing on damages and then a decision that we're not entitled to any at all because of a deficiency in the pleadings. It seems unlikely to me, had this case been returned after the second appeal to the first appeal, very specifically says the defendants had ample opportunity to challenge not only the merits of plaintiff's claims, but also the amount of the court's judgment. And the defendants chose not to seize the opportunity, and it has now passed. Court will not allow defendants to challenge the judgments now that they have deliberately chose not to challenge when they were given the opportunity. I think that would put them on notice in the second appeal that if they had a failure to state a claim, that was the basis that needed to, the first hurdle to get the judgments entered. They needed to raise it, and they didn't. And you're arguing that the court having made those findings, them having failed to appeal it, it's law of the case and waiver. And to send it back and let them go, no, no, now we're back at square one, is it's, the ship has sailed. They've missed that chance. That's right. That's exactly right. We have briefed the sufficiency of the pleadings and the issues regarding the sufficiency of the pleadings rather extensively. And in the short time I have for argument, I am not going to address those issues in detail about the sufficiency of the pleadings. The fact is that the fraud claim had been in existence and answered by the defendants that were in that first case. Same with the contract claim. So they had not only had they not alleged insufficiency of the pleadings, they had answered the complaints. And those had been, if anything, pleaded more to, at least in one case, pleaded somewhat more extensively than it was in the original pleading. So if you, if we accept that the district court can't reach the sufficiency of the pleadings, tell me what's wrong with the district court's factual findings underlying the damages awards. Why is it clearly erroneous? Well, the first problem, the first problem is that the burden of proof the plaintiff had was a probability. Reasonable certainty. So you're saying the standard of proof the plaintiff has to meet to establish damages for a default judgment is what's the standard? Under Oregon law, yeah. Well, for any judgment. That the burden of proof that the plaintiff has is reasonable certainty, which means reasonable probability. And as the Oregon courts have said, one of them, a case that they cited in their response, it's not a demanding standard. The other thing that we have here is the default setting. That as courts, the Seventh Circuit said, where the defendant's conduct impedes quantification, that must be taken into account. And in Oregon, the lack of prior history, the fact that this was, this happened at the outset after the investment, but before profits could be realized, should not foreclose a recovery of lost profits in its entirety. So what we have is we have here the evidence the plaintiff put on, some of which the court did not take into account. And I'm going to list those. You have to show it's clearly erroneous, right? Pardon? You have to show it's clearly erroneous on the factual findings. Well, I'm not so sure about that. Well, we've got to agree on something. I believe that the problem here is in the way the court considered the evidence and what it didn't consider. And there were aspects of the evidence that the court did not consider at all. For instance, the fact that the product here occupied a particular niche in the market. Well, let me, because I'm, this is a unique sort of situation. You seldom have a plaintiff who's getting a default judgment appealing the amount. We were kind of hard-pressed to find a case where the plaintiff was the appellee. And when you look at what happened when they went back and had the hearing, in essence, in a case where you had a default, there was a bench trial. Your right to a jury trial got put on a shelf in a default hearing for a judgment. And instead of just doing a prove-up hearing where the plaintiffs would come in and show that they had sufficient evidence to support a damaged claim that perhaps would get past summary judgment and therefore could go to a jury, which might properly be the standard for a court then to accept those damages, he held a bench trial and had the defendants put on evidence and challenge your, so they basically got all the benefits of a trial, denied you a jury trial without ever having, well, they were in default. That is exactly what happened. I'm going to point out, too, that the projections that were put in the Silberman business plan were validated by the defendants and that evidence was in, and that, again, the trial court did not, Judge Mosman did not look at that particular aspect of it. Silberman's explanation and his own example of his own history with his own startup and the experts, Rucker's experience, which, granted, was a higher-end product and probably more profits as a result, but also had gone very far in a 6-year period of time. You want to save any time for rebuttal? You're down to 119. I'm really well aware of that. I wanted to make one more comment. The standard for proving liability for punitive damages, we didn't have to prove liability for punitive damages. It was admitted by the default on the intentional fraud. I've set out the Riley Hill case in detail. That's the statute that governs here, that malice and intent to defraud are really the same thing. We didn't have to prove it. So there was a ground for punitive damages. We asked for punitives three times. There was an amount pleaded. Three times the amount of the economic losses. And there should have been an award of punitives here. So I'll save some time, little as it is. Thank you. Thank you. Good morning. Good morning, and may it please the Court. Mark Fleming together with Tasha Bahal and Claire Specht for the appellees. Judge Benchivengo, I do want to address your questions regarding waiver, and I think it's important to refocus and remember the issue before this Court is not whether the plaintiffs think that my clients did something wrong, but it's whether they have established that Chief Judge Mossman did something wrong. And with respect to waiver, one could search this record in vain for any mention of waiver before Chief Judge Mossman. That is not something that was — If you don't bring them in the district court, you don't get to bring them on appeal. If you don't bring them on appeal, then it's not that the appellate court didn't consider them, it's that they weren't presented and you've abandoned them. Your clients had every opportunity before the second appeal went up to raise the issue when they were reinstating default judgments to say these judgments can't stand because there's an inadequacy in the complaints. And to the extent that was raised at all, the Court said, no, I'm not going to go there. And so it could have and should have been raised in the second appeal, and it wasn't. To be clear, Judge Benchivengo, we did mention this point in our reply brief in the second appeal. We cited the Allen Newman case, and we said that if there is a hearing on damages, as we believe there should be, one of the things that should be considered is the sufficiency of the pleadings. This Court didn't say anything about it either way in the mandate, which is why Chief Judge Mosman was right to say it had not been decided or foreclosed by the mandate or by the law of the case. But the point is, Your Honor, as Your Honor has just articulated it, that is not an argument that was ever made to Chief Judge Mosman. And this isn't just a technical point. It matters because waiver is not a mandatory doctrine. It is prudential. Chief Judge Mosman would have had the discretion to overlook any waiver if waiver there were, and we think there's a good chance he would have done that. Why? How many chances should these clients have? I mean, you're on the third appeal here. The pleadings are what they are. They've been the same pleadings now since day one, and there's been multiple opportunities for your clients to go in and say that this fails to stay. The judgments were entered twice, and there was never an argument that was made that said, no, you can't do this. There were arguments about the amount, but not about whether there was an insufficient complaint to support it. No. The first time there were arguments in 2010 about the insufficiency, and in fact that's the basis on which judgment was initially entered in our favor before the first appeal. Well, except, though, while the procedural history is quite complex, it appears that some challenges to the sufficiency of the pleadings were previously raised and considered by the district court. So why wasn't that it? Why didn't you get to do new ones now? Why isn't that law of the case? Those were the ones you raised. Those were the ones that were acted upon. I'd like to be very clear about this, Judge Callahan. The only law of the case argument that was made before Chief Judge Mosman was based on the order that was vacated by this Court in the last appeal, the August 2013 decision. That one was set aside. And so he found that that couldn't be law of the case. They haven't appealed that decision. It's clearly correct. So that's the only law of the case argument that's been preserved. Waiver was not preserved at all. It was not made. Had it been made, we would have argued to Chief Judge Mosman that any waiver should be overlooked because of the strong Federal policy against default judgments, particularly when there are serious concerns about the merits of the claim as pleaded in the complaint. He never had a chance to opine on that because they did not raise it. This is something, in fact, they didn't even raise in their opening brief to this Court. If one looks at – I'm still not following that this is somehow their fault. You had – a judgment was entered, a default judgment was entered. It was appealed. And it was appealed on the basis that there was inadequate service and there wasn't personal jurisdiction, and the Court found that there was proper service, returned the case, and the motion was then brought to reinstate the default judgments. At that point, why was it not incumbent on the defendants to go, okay, we are in default, the service was proper, you're entering a default judgment, we're going to say that the complaint can't sustain that judgment because it's inadequate. And to the extent it was brought up, the district court judge at that point said, nope, that time has passed, that opportunity has passed, I'm not going to consider a challenge to the merits of the plaintiff's claims. So squarely, it could have been brought up on the second appeal to the Ninth Circuit to say that the district court would not consider a challenge to the merits when he reentered the default judgments. And if it wasn't raised then, why do you get to do it the third time? Why is that just not shutting the door? How many chances should you get to keep attacking these things from different angles? This is the angle on which it was attacked in front of Chief Judge Mossman. They raised their procedural objections. No, not the one before that. Well, the one before that, we did mention it in our reply brief to this Court, and we cited the Allen Newman decision, and we said if there's going to be a hearing on damages, as we believe there should be, this is something that we will, that we intend to raise. Where is that specifically in the record? Where are you? Age 25 of the reply brief in the second appeal before this Court, the last appeal. Now, that's not something this Court addressed in the mandate. It didn't decide it either way. But, of course, the mandate rule is based on what the Court actually did decide and did say in its mandate. And in this situation, there was nothing in the mandate that suggested that the district court's decision on remand, Chief Judge Mossman's discretion, was in any way confined. He had to hold a factual, make a factual determination on damages. As clear as they think it is and as what you think it is. I don't think it's really as clear as what either of you think it is. Well, if that's the case, Judge Callahan, then the district court is free to decide any matters left open by the mandate of the court, and that is this Court's decision in cassette. And what do you review that for? How do you review that, whether the district court exceeded the mandate? I think the review of the mandate is de novo. But the point is the standard, the legal principle that this Court applies is whether the mandate actually foreclosed the action the district court took. And that's, this Court has said that over and over again in cases like Kellington and cassette. It goes back to the Supreme Court's decision in Sanford, Fork, and Toole from 1895. As long as the mandate does not foreclose something, the district court is free to do it on remand. And that's exactly what Chief Judge Mossman considered and did in this case and was right to do so. But he emphasizes at some length the difference between entry of default and entry of default judgment. How is this difference important to our consideration of the issue as to whether the district court exceeded the mandate? It's highly important, Your Honor. So entry of default. I asked how. Not, not, how is it important? Yes, it is important because it's not just my distinction. It's the distinction of the rules of civil procedure, right? 55A calls for an entry of default, but then that doesn't automatically mean there's going to be an entry of default judgment. Entry of default judgment is something that is discretionary with the district court. It always has been. I don't think that's denied by the plaintiffs, that the district court has discretion to decide whether a default judgment should be entered. And one of the considerations that needs to be addressed in figuring out whether to do it is whether the claims are, as pleaded in the complaints, are actually sufficient to support a default judgment. And this Court has said that repeatedly in Allen Newman and Cripps and the decision in Durow from just earlier this year, where this Court decided that the, the, the Durow failed to state a claim on, on which relief could be granted, quote, necessitating the denial of the motion for a default judgment. So that's, again, I don't think it's disputed that the district court can consider that. So if, if we don't agree with you, what's your position on the damages? Because the Judge Mossman did have a, he found an alternative amount of damages. Correct, Your Honor. We think the, the plaintiffs have not shown any kind of clear error in either the procedure or the substance of his decision. Judge Banchivengo, there was no demand that this be done as a jury or in any other way. The plaintiffs consented to the procedure as it was held. Judge Mossman decided that whether we showed up or not. Wait, wait. I know. That is the, there is, you're, you're done. The jury trial issue is set aside because you're in default. But should the hearing basically then constitute what, what's now become a bench trial as opposed to approve up hearing, which is what we talk about when we talk about default judgments. Because in most cases, the defendants aren't there. And the plaintiff comes in and does approve up of what their damages should be. And the court finds that, that, that there's sufficient evidence to support their claim. And in this case, it looks like the Judge Mossman put on a, a complete bench trial. I took, you know, and thought your expert was, was more credible than their expert. Well, why, why should that be the standard? Why should a, a plaintiff who's holding a, a finding of liability have to, to hang, put on that kind of level of a hearing to get their damages? Well, first of all, I, I don't think there was any challenge to this procedure below. To the extent they opposed our participation in it, Chief Judge Mossman said ultimately it didn't matter because of the concerns that he had with their evidence would have been the same whether we were there or not. Okay. I mean, there were plenty of reasons to disbelieve Mr. Rucker, who was cross-examined very effectively at the hearing. But those are points that he, he sort of recognized just in reading the report. He had said he hadn't spent more than three hours reviewing the business plan. He hadn't reviewed the entire document. He had no basis for even computing lost profits. He didn't know how that would be done. The business plan, as I understand it, was drafted by the parties way before litigation started, that both of them signed off on it and said it was reasonable. That's not correct. No, Your Honor. It was not drafted by the parties. It was drafted by the plaintiffs entirely. It was not signed off on. There's no evidence that it was signed off on by anyone at the defendants. It wasn't created for litigation, though. This was the business plan that you all went into when you were, when you were going to start this, this business, right? This was not a litigation prepared plan that somebody crafted for purposes just of this hearing. It, it was, it was pre-litigation, Your Honor. I want to be careful with, with the phrase you all. I don't want to suggest that we, that my clients were in any way sort of had signed off on the numbers or anything like that. That is a point they tried to elicit at the hearing. They tried to ask their, their chief witness, Mr. Rahman, whether Mr. Zhuozhang Shen, who's a dismissed defendant, no longer in the case, had actually approved the numbers. And to his credit, he didn't say that. Okay. So there is no evidence whatsoever that these numbers were approved. That is attorney argument that is unsupported by anything in the record. Okay. What about the offset? Shouldn't that have come after the, the, the traveling? So this is a situation that was discussed by, by counsel for the plaintiffs with Chief Judge Mossman. And he specifically asked, if we do this in silos, does the offset come off of the lost capital amount? And the plaintiffs agreed, yes, it comes out of lost capital, not lost profits. And then the, the judge said, if you get 505,000, which is the amount of lost capital they wanted, then I should reduce it by 200,000. And the plaintiffs said, correct. And that's on page 260 of the supplemental excerpts of record. If what they actually meant was that the 200,000 should be taken off the very end, then that colloquy would not have made any sense. Because there would not have been any silos. You would simply have taken it off the very end. When the order came out, it said plaintiffs and the defendants agree that it should come off the 505,000. They did not in any way suggest that that was, they didn't give the, the district judge any reason to think that was a misunderstanding of the colloquy. They filed a letter in which they tried to take back their concession in a footnote that was in response to a request for a letter on a very different point. It wasn't proper. When the order came out, they again tried to raise the issue by letter. They were told by the clerk that they should file a motion for clarification. When they filed their motion, they abandoned this issue. They didn't mention it at all. And even before this court, they have not given you any reason to think that Chief Judge Mossman misunderstood the concession that they made at trial. That would be, or at the hearing, that would be an abuse of discretion review, and they don't even meaningfully brief it. They certainly don't have any, they don't cite any cases to that effect. So we think this is a situation where no matter what plaintiffs wish they had said, Chief Judge Mossman correctly understood what they said, and, and, and there's no showing that it was incorrect to interpret it the way they did. I didn't get a chance to come back to law of the case. I want to make sure that the Court has our position on that. I know, Judge Callahan, you had questions about it. Law of the case depends on what exactly has been decided in a previous decision, and the only argument that they made below was about the August 2013 decision, which has been set aside and therefore can't be law of the case. Chief Judge Mossman decided that. To the extent they're trying to make a law of the case argument based on other orders or other previous happenings, then I think it collapses with the point that they now are trying to raise for the first time in this Court regarding waiver. Again, I think this isn't just a technical point. It's something that had they believed was really an obstacle to Chief Judge Mossman addressing these issues, it was incumbent upon them to raise it in front of Chief Judge Mossman. They did not do so, and that's important, because had they raised it, we would have given Chief Judge Mossman numerous reasons, including the disfavored nature of entry of default judgments, the complete insufficiency of these claims. And also the fact that they not only in themselves are the claims insufficient, it's not even clear which defendants they are raised against. Remember, there have been multiple defendants in these cases over the course of the multiple complaints. Most of them have been dismissed, whether for lack of jurisdiction or because they settled or for lack of service of process. At this point, it was impossible for Chief Judge Mossman, in carrying out this Court's mandate to make a factual determination of damages, to figure out who the judgment should run against without assessing the sufficiency of the complaints. He needed to do that in order to decide which defendants were on the hook for what,  under other claims. Assessing the nature of the claims and their sufficiency to support a default judgment was essential to him carrying out the task that this Court assigned him. Again, we would respectfully submit he got — he did that as this Court directed him to. He did it correctly, and the plaintiffs have not shown any error in his decision, and we would respectfully submit that the judgment should be affirmed. Unless the Court has further questions. Thank you. Thank you, Your Honor. Okay. I'll give you one minute. Very briefly. I would refer the Court regarding the amount of damages to the $45 million total that was in the business plan. That appears in the opening brief at 46 and was supported by Mr. Silberman's testimony. Regarding the computation, damages refers to the amount of economic loss. It also refers to the amount that's troubled. That was the problem. When the Court said damages, Mr. Hiller was thinking damages as a total. The $500,000 they had just been talking about. But that's not what happens with the reduction for a previous payment. Finally, regarding the law of the case, it was mentioned, the mandate and the fact that things were not raised earlier was mentioned in the first couple of paragraphs of this ER99. It's the plaintiff's memo for the hearing. I'm going to quote something from the Fifth Circuit that I've quoted in my briefing about law of the case and waiver. A party who has chosen not to argue a point on a first appeal should not stand better as regards the law of the case than the one who argued and lost. So it's our position that this should not have been considered. All right. Thank you both for your argument in this matter. It will stand submitted.
judges: Fisher, Callahan, Bencivengo